IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH D. COOKSON, | No. 2:12-cv-2542-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 16).  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits with a protective filing date of March 6, 2009, alleging an onset of disability on October 12, 2006, due to arthritis in knees, back and hands, stress, anxiety, panic attacks, and high blood pressure (Certified administrative record ("CAR") 120-26, 133-36, 137-43, 172-80). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on March 9, 2011, before Administrative Law Judge ("ALJ") Laura Speck Havens. In a June 29, 2011, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since October 12, 2006, the alleged onset date (20 CFR 404.1571 *et seq*).

3. The claimant had the following severe impairments: low back pain, neck pain, bilateral knee pain, and depressive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is limited to only performing simple repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 18, 1959 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, through the date of this decision (20 CFR 404.1520(g)).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

(CAR 11-25). After the Appeals Council declined review on August 9, 2012, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ erred in several ways: (1) the ALJ improperly evaluated her mental impairments (2) the ALJ improperly rejected medical opinions; and (3) the ALJ failed to properly credit plaintiff's testimony as well as third party statements.

/ / /

4

### A. MENTAL IMPAIRMENTS

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Here, the ALJ found plaintiff's severe impairments consisted of low back pain, neck pain, bilateral knee pain, and depressive disorder. She found plaintiff's complaints of bilateral hand pain non-severe, a determination she then explained.

Plaintiff, however, argues the ALJ erred by failing to consider her anxiety disorder a severe disorder at step two. She contends the ALJ failed to give adequate reasons for rejecting the opinions of Dr. Morgan and Dr. Cushman, and giving great weight to a non-examining state agency psychiatrist.

---

[3] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,

6

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### Dr. Morgan

Plaintiff first contends the ALJ failed to provide legally sufficient reasons for rejecting Dr. Morgan's opinion. Dr. Morgan conducted a psychological evaluation of plaintiff on March 3, 2011. (CAR 365-71). Dr. Morgan opined that plaintiff met the criteria for 12.06, an Anxiety related disorder. He found "[h]er anxiety is characterized by recurrent, severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and a sense of impending doom occurring on the average of at least once a week." (CAR 370).

As to Dr. Morgan's opinion, the ALJ stated:

> Robert L. Morgan, Ph.D., evaluated the claimant on March 2, 2011 and also filled out a Psychiatric Review Technique form. Dr. Morgan opined that the claimant met listing 12.06 for Anxiety-Related Disorder. The doctor found that the claimant's degree of limitation in activities of daily living and maintenance of social functioning was marked. Dr. Morgan found that the claimant had a moderate degree of limitation in maintaining concentration, persistence, or pace and no episodes of decompensation [Exhibit 14F3-5]. Dr. Morgan's opinion is given reduced weight because it is not consistent with the opinions of the other evaluating doctors. While the claimant has more than a minimal limitation in mental functioning, the medical evidence does not support the degree of severity opined by Mr. Morgan.

(CAR 23).

As well as reviewing other medical opinions in the record, the ALJ further stated:

> Dr. Morgan observed that the claimant had a moderately depressed mood with a moderate restriction of affect. Her thought processes were coherent, organized, logical, and goal directed with no evidence of inappropriate thought content. Dr. Morgan noted the claimant's intellectual functioning to be average and her memory and concentration to be intact. The claimant's results on the Beck Anxiety Inventory suggested a severe anxiety disorder. Dr. Morgan diagnosed panic disorder with agoraphobia and depressive disorder, not otherwise specified [Exhibit 14F6-12].

(CAR 26).

/ / /

/ / /

Finally, evaluating the medical opinions in the record, the ALJ determined:

> Dr. Morgan opined that the claimant had been disabled since the time she initially applied for disability. The doctor found that the claimant would not likely exhibit a significant change in functioning over the course of the next twelve months. However, Dr. Morgan felt that the claimant presented with a satisfactory ability to manage funds in her own best interest should an award be made [Exhibit 14F12]. Dr. Morgan's opinion is given reduced weight because the medical evidence as a whole as well as the claimants reported daily activities does not support such severe limitations in relation to the claimant's mental impairments.

(CAR 29).

Plaintiff argues that the reasons given for rejecting Dr. Morgan's opinion are not specific and legitimate. However, contrary to plaintiff's argument, the ALJ specifically found Dr. Morgan's opinion to be inconsistent with the opinion of other examining physicians, and the medical evidence in the record as well as plaintiff's reported daily activities do not support the severe limitations. The undersigned finds these reasons to be specific and legitimate. Indeed, as the ALJ noted, Dr. Morgan's opinion is not consistent with that of other examining physicians. Two other examining physicians, Dr. Cushman and Dr. Scaramozzino, opined plaintiff had limited to no significant mental impairments. Where there are contradicting opinions, such as is the case here, the ALJ is charged with resolving the conflict which she did. To the extent the ALJ was required to set forth specific and legitimate reasons for not accepting Dr. Morgan's opinion, the undersigned finds the reasons set forth to be legally sufficient, especially given that all three opinions evaluated were examining physicians not treating physician. This determination is further supported by the non-examining state agency physician's opinion, which supports the ALJ's determination.

As the undersigned finds no error in the ALJ's determination that Dr. Morgan's opinion was entitled reduced weight, and as Dr. Morgan is the only medical opinion to support a finding that plaintiff's anxiety is a serious limitation, the undersigned finds the ALJ did not error in not including plaintiff's anxiety as a severe impairment at step two. Further, even though not specifically determined to be a severe impairment at step two, the ALJ did not ignore this

condition. Rather, she specifically addressed plaintiff's anxiety in combination with her other limitations. As discussed in more detail below, the ALJ considered plaintiff's anxiety at step three, in evaluating the listed impairments, as well as in determining plaintiff's RFC at step four.

The undersigned finds no reversible error either as to the ALJ's step two analysis or in her treatment of Dr. Morgan's opinion.

Dr. Cushman

Next, plaintiff contends the ALJ erred in failing to give any reason for rejecting a portion of Dr. Cushman's opinion, specifically that plaintiff's would have difficulty with regular attendance and consistent participation in a work setting.

As to Dr. Cushman, the ALJ stated:

> Philip M. Cushman, Ph.D., State agency psychological consultant, evaluated the claimant on May 4, 2011. Dr. Cushman observed that the claimant had difficulties facing him since she sat sideways in her chair and she tended to lean away from him. She appeared mildly anxious and mildly irritable. The doctor noted that the claimant was, at times, rather cynical in her answers to his questions. The doctor's evaluation results were unremarkable. Dr. Cushman diagnosed recurrent major depressive disorder, mild in severity, with anxiety and panic attacks; amphetamine abuse by history, reportedly in remission; physical abuse by history; anxiolytic abuse by history, under physician's care; and opioid abuse, by history, under physician's care. Dr. Cushman recommended treatment in the form of antidepressant medications and supportive counseling since long-term treatment with benzodiazepine and opiods appeared to not be helping the claimant [Exhibit 16F].

(CAR 26-27).

In weighing the medical opinions, the ALJ stated:

> Dr. Cushman opined that the claimant is capable of performing some detailed, complex, simple, and repetitive tasks in a work setting. The doctor found that she would have difficulties currently with regular attendance and consistent participation and working a normal workday or workweek. Dr. Cushman found that the claimant appears capable of following simple verbal instructions from supervisors, but not complex instructions. She is capable of getting along with supervisors, coworkers, and the general public when she wants to. The doctor also felt that she is capable of dealing with the usual stressors encountered in a competitive work environment when she wants to. She appears cognitively capable

9

> of managing her own funds [Exhibit 16F]. Dr. Cushman's opinion is given some weight because it is supported by the findings during the doctor's examination and it is primarily consistent with the medical evidence as a whole. The doctor examined the claimant in-person and wrote a thorough report of his findings. In addition, Dr. Cushman is a State agency expert well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations.

(CAR 28).

The undersigned finds the ALJ's treatment of Dr. Cushman's opinion to be legally sufficient. As the ALJ discussed, and as set forth above, there are inconsistent examining physician's opinions in the record. The ALJ appropriately resolved the conflict between the opinions. While Dr. Cushman's opinion was generally accepted, and given some weight, the ALJ was not required to adopt the entire opinion. Especially where, as here, the ALJ had three examining physician opinions which were contradictory, and a non-examining physician evaluating the three widely differing opinions. In addition, Dr. Cushman's opinion does not specifically support plaintiff's contention that her anxiety should have been found a severe impairment at step two. Indeed, Dr. Cushman did not diagnose plaintiff specifically with anxiety disorder. Rather, Dr. Cushman diagnosed plaintiff with "Major Depressive Disorder, recurrent, mild severity (with anxiety and panic attacks)." (CAR 409). As the ALJ found plaintiff's depression to be a severe impairment, her argument that the ALJ erred in not finding her anxiety to be a separate severe impairment is not supported by Dr. Cushman's diagnosis or opinion.

Mental Impairments

Plaintiff contends the ALJ erred in failing to take into consideration her anxiety in evaluating her mental impairments. She argues the ALJ ignored her anxiety completely. The undersigned disagrees.

"Where the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, 'all medically determinable impairments must be considered in the remaining steps of the sequential analysis.'" Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)).

Here, the ALJ did consider plaintiff's impairments. At step three, the ALJ evaluated plaintiff's impairments to determine whether her impairment or combination of impairments meets or equals one of the listed impairments. In so doing, the ALJ considered and discussed plaintiff's mental impairments, including her anxiety disorder, and determined the listing criteria was not met. In so doing, she discounted Dr. Morgan's opinion, which as discussed above was not erroneous. She then further evaluated plaintiff's mental impairments, again including her anxiety disorder, at step four to determine her residual functional capacity. Throughout the ALJ's analysis, plaintiff's anxiety was considered and discussed, and all of the medical opinions were evaluated and weighed. Again, the undersigned has found no reversible error in the ALJ's review and treatment of the medical opinions. The ALJ ultimately determined that plaintiff's mental impairments minimally impacted her abilities, only finding she had moderate difficulties with regard to concentration, persistence or pace. The ALJ did not ignore plaintiff's anxiety disorder, as she argues. To the contrary, the ALJ included her anxiety in the consideration of her abilities and limitations.

Plaintiff further argues that the ALJ erred in relying on the state agency psychiatrist. She contends that a non-examining, non-treating physician cannot by itself constitute substantial evidence. The undersigned agrees with the statement of law, but contrary to plaintiff's arguments, the ALJ did not rely solely on the non-examining state agency physician. There is substantial evidence in the record to support the ALJ's treatment of the medical opinions, as discussed above. Using Dr. Hood's reviewing opinion to summarize plaintiff's abilities and limitations was not erroneous, especially considering the widely varying examining physician opinions in the record. The undersigned finds no reversible error.

### B.   TREATING PHYSICIAN OPINION

Plaintiff also contends the ALJ erred in discounting her treating physician's opinion. She argues the ALJ failed to provide specific and legitimate reasons for not accepting Dr. Hufford opinion with controlling weight.

11

As to Dr. Hufford, the ALJ stated:

> Dr. Hufford, the claimant's treating physician, filled out a Questionnaire, dated February 22, 2011, in which the doctor opined that the claimant's degenerative arthritis precludes her from performing any full time work at any exertion level. In an eight-hour workday, Dr. Hufford found that the claimant was able to sit for twenty minutes at a time and up to two hours total and she was able to stand and walk for twenty minutes at a time and up to two hours total. In addition, Dr. Hufford opined that the claimant could lift and carry only five pounds frequently and only ten pounds occasionally. The doctor found that the claimant could preform the following activities for the following percentages of time in an eight-hour workday: reaching for five to ten percent of an eight-hour workday, handle for ten to fifteen percent, feeling for sixty to seventy percent, pushing and pulling for five percent, and grasping for five percent [Exhibit 13F]. Dr. Hufford's opinion is given reduced weight because the objective medical evidence does not support such severe functional limitations on the part of the claimant. In addition, Dr. Hufford is not a specialist and never referred the claimant to a specialist for her supposedly disabling impairment.

(CAR 28).

The ALJ's discussion of Dr. Hufford's opinion follows her discussion of Dr. Wang's opinion, who was a consulting examining physician. Dr. Wang's opinion is contrary to that of Dr. Hufford, in that Dr. Wang opined, following an examination of plaintiff, that plaintiff had minimal if any restrictions. As these two opinions conflicted with each other, the ALJ was required to resolve the conflict, which she did. The reasons stated for reducing the weight of Dr. Hufford's opinion, including the lack of objective medical evidence supporting the severe functional limitations, is a specific and legitimate reason. The undersigned finds no reversible error.

### C.    PLAINTIFF'S CREDIBILITY

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d

1  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

2  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

3  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

4  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

5  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

6  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

7         If there is objective medical evidence of an underlying impairment, the

8  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

9  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

10 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

15 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

16 F.2d 1403 (9th Cir. 1986)).

17        The Commissioner may, however, consider the nature of the symptoms alleged,

18 including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

19 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

20 claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

21 testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

22 prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

23 physician and third-party testimony about the nature, severity, and effect of symptoms.  See

24 Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

25 claimant cooperated during physical examinations or provided conflicting statements concerning

26 drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (CAR 27). In support thereof, the ALJ stated:

> The claimant has described daily activities, which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. During the day, the claimant alleges that she attends to her personal grooming needs, does some housework and errands, cleans up the kitchen after dinner, and relaxes as much as she can. She claims that she will sometimes visit friends. The claimant has two dogs that she feeds and cleans up after on a daily basis [Exhibit 6E]. The claimant informed Dr. Scaramozzino on June 6, 2009 that she enjoyed volunteering at the Veterans of Foreign Wars (VFW) organization [Exhibit 5F]. The claimant testified that she is able to cook, wash dishes, do laundry, go shopping for groceries, and do some yard work or gardening. The claimant's varied activities of daily living are inconsistent with a complete inability to perform substantial gainful activity.
>
> There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant stopped working on January 26, 2006 when she was laid off and given a severance package [Exhibit 3E].
>
> The claimant provided inconsistent information regarding daily activities. The claimant reported to Dr. Morgan on March 3, 2011 that her boyfriend was diagnosed with a brain tumor and seizure disorder; though, she also indicated that he did the domestic activities such as vacuuming or dusting in the home while she primarily stayed in her bedroom all day [Exhibit 14F6-12]. However, she told Dr. Cushman on May 4, 2011 that she performed all types of chores such as washing the dishes and shopping for food and some light cooking [Exhibit 16F]. In addition, the treatment notes from Dr. Hufford's office, dated January 4, 2011 and February 22, 2011, indicate that the claimant was unemployed and that she worked as a housekeeper [Exhibit 15F].
>
> The record reflects no actual mental health treatment for the claimant's alleged mental impairments. In fact, the claimant told David Fall, PA-E, on December 19, 2008 that she felt depressed,

1         though she refused to start antidepressants due to possible weight
gain [Exhibit 3F2-6]. She informed Dr. Morgan that she consulted
2         with a marriage and family therapist a number of years ago, but she
had no other treatment with mental health professionals [Exhibit
3         14F6-12]. The claimant informed Dr. Cushman on May 4, 2011
that the last time she received supportive counseling was twelve
4         years prior [Exhibit 16F]. The claimant's reluctance to seek out
mental health treatment and refusal to take prescribed
5         antidepressants for supposedly debilitating mental health issues
belies her allegation of complete disability.
6 (CAR 27).

7         Plaintiff contends the ALJ's reasons for discrediting plaintiff's testimony are not
8 supported by the record. She contends they were taken out of context, misstated, or simply do not
9 support her decision. She argues her limited daily activities were consistent with her disabling
10 symptoms, that she continued to work through her disabling condition but her condition
11 deteriorated to the point she could not go back to work, and she did receive mental health
12 treatment.

13         Contrary to plaintiff's argument, the ALJ's reasons set forth above are sufficiently
14 clear and convincing reasons for discrediting her testimony. The ALJ analyzed her statements,
15 using appropriate considerations, and specifically found her daily activities inconsistent with her
16 allegations of limitations, inconsistent statements, and questionable mental health treatment.
17 While the court may have reached a different conclusion, this court cannot substitute it's own
18 interpretation over the ALJ's. If substantial evidence supports the administrative findings, or if
19 there is conflicting evidence supporting a particular finding, the finding of the Commissioner is
20 conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where
21 the evidence is susceptible to more than one rational interpretation, one of which supports the
22 Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947,
23 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in
24 weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

25         The reasons the ALJ set forth for discrediting plaintiff are supported by the record.
26 While plaintiff does not agree with the reasons, the record as a whole does support such findings.

1    As the ALJ states, plaintiff's statements could be construed as inconsistent, her daily activities
2    are more extensive than would be expected from someone with her alleged symptoms, and while
3    she did have some history of anti-anxiety medication, during the relevant time period she did not
4    seek mental health treatment and chose not to try alternative antidepressants.
5           The court finds the reasons the ALJ set forth for discrediting plaintiff's testimony
6    are sufficiently clear and convincing, and are supported by the record as a whole.  Giving the
7    ALJ's opinion the proper deference it is entitled, the undersigned cannot find the determination
8    was erroneous.  See Fair, 885 F.2d at 604.

### D.  THIRD PARTY STATEMENTS

10          Similarly, plaintiff contends the ALJ improperly discredited the statements of her
11   friend regarding her limitations.  In determining whether a claimant is disabled, an ALJ generally
12   must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v.
13   Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) &
14   (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to
15   work is competent evidence . . . and therefore cannot be disregarded without comment."  See
16   Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to
17   discount the testimony of lay witnesses, he must give reasons that are germane to each witness."
18   Dodrill, 12 F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to
19   reject third-party statements where the statements are similar.  See Valentine v. Commissioner
20   Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family
21   member's testimony, which was similar to the claimant's, for the same reasons given for
22   rejection of the claimant's complaints).
23          In regards to the lay witness statements, the ALJ found that:

> James O. Nakama, the claimant's fiancé, filled out a Third Party
> Function Report about the claimant on July 8, 2009.  Mr. Nakama
> indicated that he had known the claimant for five years and they
> spent most of their time together.  He claimed that he cooked most
> meals.  Mr. Nakama alleged that the claimant used to be more

16

        active, but she stopped doing a lot of things because of her pain. Mr. Nakama primarily corroborated the statements of the claimant [Exhibit 4E]. The statements of Mr. Nakama are not well supported by the treatment records, especially in the form of the minimal objective findings relating to the claimant's impairments, and thus, the undersigned finds his statements to be unpersuasive.

(CAR 25).

        Plaintiff contends the ALJ failed to provide proper reasons for rejecting the lay witness statements. Specifically she argues the ALJ may not discredit the testimony as unsupported by the medical evidence. However, in addition to finding Mr. Nakama's statements unsupported by the treatment records, the ALJ also determined that his statements primarily corroborated those of the plaintiff which, as addressed above, were discredited. As such, the ALJ did not err is similarly discounting Mr. Nakama's statements.

## IV.  CONCLUSION

        Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment (Doc. 13) is denied;

        2.    Defendant's cross-motion for summary judgment (Doc. 17) is granted; and

        3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 24, 2014

                                          */s/ Craig M. Kellison*
                                          **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE